IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                     **Case No. 02-40066-01-RDR**

JAMES B. LANDSAW,

        Defendant.

_____

### **MEMORANDUM AND ORDER**

This case was initiated with an indictment charging defendant with: count one - unlawful possession of chemicals used to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(2); and count two - conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846. Defendant pleaded guilty to count one pursuant to a plea agreement.

This is a case in which defendant did not receive the sentence he expected to receive when he pleaded guilty. Defendant received a sentence of 108 months. He expected to receive a sentence of 87 months. A sentence of 87 months was apparently the expectation of counsel for both sides at the time of the guilty plea. They anticipated, incorrectly, that the safety valve provisions would be applied to the offense to which defendant pleaded guilty. The court would have been willing to sentence defendant to 87 months if that had been the bottom of

the guideline range.   Of course, in 2003 when defendant was sentenced, the Sentencing Guidelines were considered mandatory. Because the safety valve provisions did not apply to the offense of conviction, the bottom of the guideline range was 108 months. If defendant had pleaded guilty to Count Two, instead of Count One, he probably would have received a sentence of 87 months because the safety valve provisions apply to that offense.

This case is now before the court upon defendant's motion to vacate sentence pursuant to 28 U.S.C. § 2255.   Defendant raises numerous arguments in an effort to vacate his conviction and sentence.

Background

The factual basis for the plea was described in the plea agreement as follows:

> On April 2, 2002, a confidential informant(CI) working with Detective Robert Dierks of the Montgomery County Sheriff's Department called Det. Dierks and advised him that the CI had arranged with the defendant to sell him 12 cases of ephedrine pills for $400.00. The defendant reportedly told the CI that he was going to use the pills to make dope, and that he was going to get anhydrous ammonia from another individual on April 4th.   The defendant told the CI that he would have dope ready by the weekend.
>
> On April 3rd, Det. Dierks and Det. Wade met with the CI prior to doing the transaction.   At this time, Det. Dierks supplied the CI with 12 boxes of Pseudo 60's Max Brand Pseudoephedrine HCl for the CI to sell to the defendant.   Each box contained 12 bottles of pseudoephedrine; each bottle contained 60 tablets; and each tablet contained 60 mg of pseudoephedrine.   The

2

CI then went to the defendant's residence at 600 E. Edison Street in Independence, Kansas to do the transaction. Dets. Dierks and Wade followed the CI to the defendant's residence and observed the defendant enter the residence at approximately 7:45 p.m. Inside the residence, the CI sold the defendant the 12 boxes of ephedrine pills for $400.00 and left the residence at approximately 7:49 p.m. While in the residence, the CI spoke with the defendant and asked him how he planned on "breaking down" the pills. The defendant told the CI that he used "Heet" (an antifreeze containing ether) to break down the pills. The defendant also told the CI that he was planning on getting antifreeze from another individual on the 4th, and that he would have dope ready by the weekend.

Within a few minutes after the transaction, surveillance units in the area observed the defendant leave the residence and get into a Chevy Blazer. Det. Smith stopped the vehicle and identified the driver as the defendant. Det. Smith then asked the defendant if he wanted to give him consent to search the Blazer, and the defendant replied, "sure you can search my truck." Det. Smith then asked the defendant if there was anything illegal in the truck, and the defendant stated that there was a sack that some guy had dropped off at his house just a few minutes ago, but he did not know what was in the sack, which was located behind the driver's seat of the vehicle. Det. Smith opened the sack and found that it contained 12 boxes of Pseudo 60's Max Brand Pseudoephedrine HCI containing 12 bottles each of pseudoephedrine. In all, the bottles contained 8,580 pills with a total of 514.80 grams of pseudoephedrine.

At approximately 8:41 p.m., Det. Dierks obtained a warrant to search the defendant's residence. Shortly thereafter, Det. Dierks and other officers searched the defendant's residence and found a couple of yellow pills, a package of unopened Energizer lithium batteries, an opened one-gallon jug of antifreeze with an unknown white cloudy liquid in a vehicle on the property, and a can of starter fluid.

The plea agreement states that the parties agreed that these

3

were the facts constituting the offense of the case.   The records of this case also include a search warrant affidavit which recounts how numerous confidential informants had identified defendant as being involved in methamphetamine manufacturing activities from July 2001 through April 2002.

During the guilty plea hearing, the court asked defendant what he did in this matter.   Defendant replied, "I purchased some pills from a guy."   The court asked if defendant "intended to use them as the government has suggested."   Defendant replied, "Yeah."   Transcript, 12/16/02, p. 18.

As part of the plea agreement, the government stated that it would not oppose "the defendant receiving a 2 level reduction for the safety valve under U.S.S.G. § 5C1.2, provided that he is otherwise eligible for the same."   Plea agreement, p. 4.   The plea agreement further states:

> The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge.   The United States cannot and has not made any promise or representation as to what sentence the defendant will receive.

Id.

At the plea hearing, defendant was told that the terms of the plea agreement were "merely recommendations to the Court and that the Court can reject the recommendations without permitting you to withdraw your plea of guilty and might impose a sentence

4

that is more severe than you may anticipate." Transcript, p. 8.
Defendant was also told that the sentence recommended in the
presentence report "may be different from any estimate that your
attorney can give you at this time." Transcript, p. 11.
Defendant reserved the right to appeal issues raised in motions
to suppress which were denied by the district court.

Defendant signed and swore to a guilty plea petition. The
petition states in part that defendant knows "that if I plead
'GUILTY,' I am thereby waiving my right to a trial, and that
there will be no further trial of any kind, either before a
Court or jury . . ." Petition, p.2. The petition states that
defendant "hope[s] to receive leniency, but I am prepared to
accept any punishment permitted by law which the Court sees fit
to impose." Petition, p. 4. The petition also states that
defendant is aware that under the Constitution if he maintains
a "not guilty" plea he is guaranteed a speedy and public trial
by a jury and many protections during the trial, such as the
right to counsel, the right to confront witnesses, the right to
subpoena witnesses and the right against self-incrimination.
Petition, p.2. These rights were also reviewed orally with
defendant during the guilty plea proceedings. Transcript, p.
13.

During the sentencing hearing, defendant's counsel withdrew

an objection asking for the application of the safety valve, and the court agreed that under Tenth Circuit authority, <u>U.S. v. Saffo</u>, 227 F.3d 1260, 1273 (10th Cir. 2000), the safety valve provisions were inapplicable.   To reiterate, defendant was sentenced to a term of 108 months, which was the bottom of the guideline range.

Defendant filed a direct appeal with the Tenth Circuit.  The only issues raised concerned the decision on defendant's motions to suppress.   The Tenth Circuit affirmed the denial of the motions to suppress and affirmed defendant's conviction.

Defendant raises several arguments in support of his motion to vacate sentence.

<u>Guilty plea proceedings</u> Defendant's first argument alleges several errors by the court in the conduct of the guilty plea proceedings.  First, defendant asserts that he understood that if he pleaded guilty he would receive the benefit of the safety valve at the time of sentencing.   This would have made a difference of 21 months (108 - 87) in the bottom of the guideline range.   The record supports a claim that defendant expected to receive the benefit of the safety valve provisions. The record does not support a claim that defendant was promised or guaranteed the advantage of the safety valve.   The government only agreed not to oppose the application of the safety valve

provisions provided defendant was eligible for their application. Defendant said during the proceedings that he understood that the terms of the plea agreement were only recommendations to the court which the court might or might not follow. Defendant said that he understood that the sentence imposed might be different from any estimate that his attorney could give him at that time. The record demonstrates that defendant was not promised he would receive the safety valve and that he agreed to plead guilty knowing that the sentence might be different than any estimate he was told prior to pleading guilty. Defendant attempts to allege fault with the guilty plea proceedings on the basis of the following excerpt:

> THE COURT: All right. Let me ask you then, Mr. Landsaw, still talking about the plea agreement, does that plea agreement, as it's been recited to you, represent in its entirety any understanding you have with the government, you do not have any other understanding with the government. Is that correct?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. And has anyone made you any other or different promise to bring you to a point where you're entering a plea of guilty in this case?
>
> THE DEFENDANT: No, sir.

Transcript, 12/16/02, p. 8.

Defendant implies that there was some unwritten understanding that was part of the guilty plea. We believe from the context of the proceedings, defendant's first "no" answer

7

was intended to convey that he had no other understandings with the government than those recited in the plea agreement.   Of course, defendant did not claim otherwise during his sentencing hearing or on direct appeal.     Defendant claims it was error not to inform him that he could possibly have had a bench trial if he had stayed with his "not guilty" plea.  We reject this argument.   Defendant cites no authority holding that such information is necessary for a defendant to make a knowing and voluntary plea.  Clearly, the Constitution does not guarantee a defendant a right to a trial to the court and FED.R.CRIM.P. 23, which governs the waiver of the right to a jury trial, requires government consent and court approval before there can be a bench trial.  We do not think an intelligent plea of guilty must be predicated upon knowledge of all the procedural possibilities available to a defendant, even those that would require the consent of the government.  Also, we note that the plea petition signed by defendant refers to a waiver of trial "of any kind, either before a Court or jury" as a result of pleading guilty. Plea petition, p. 2, paragraph 8.  Obviously, this suggested to defendant that a trial to the court was a possibility under the right circumstances.

Next, defendant asserts that the court did not adequately describe the process of a jury trial during the guilty plea

proceedings.   There  is  Tenth  Circuit  authority  for  the
proposition that prior to waiving the right to a jury and having
a  bench  trial,  a  defendant  should  be  informed:   that  a  jury  is
composed of twelve members of the community; that defendant may
take  part  in  the  jury  selections;  that  jury  verdicts  must  be
unanimous;  and  that  the  court  alone  decides  guilt  or  innocence
if  the  defendant  waives  a  jury  trial.   U.S.  v.  Robertson,  45
F.3d  1423,  1432  (10th  Cir.)  cert.  denied,  516  U.S.  844  (1995)
(conviction after bench trial vacated when appellate court could
not  determine  if  defendant's  waiver  of  right  to  jury  trial  was
knowing,  intelligent  and  voluntary).   In  this  case,  the  court
did  not  review  these  facts  with  defendant  prior  to  accepting
defendant's  guilty  plea.   Defendant  does  not  assert,  however,
that he was ignorant of these facts.   Moreover, he did not raise
this  issue  at  sentencing  or  on  direct  appeal.   "A  defendant's
failure  to  present  an  issue  on  direct  appeal  bars  him  from
raising the issue in his § 2255 motion, unless he can show cause
excusing  his  procedural  default  and  actual  prejudice  resulting
from  the  errors  of  which  he  complains,  or  can  show  that  a
fundamental  miscarriage  of  justice  will  occur  if  his  claim  is
not  addressed."   U.S.  v.  Cook,  997  F.2d  1312,  1320  (10th  Cir.
1993).   Defendant  has  not  alleged  any  cause  other  than
ineffective assistance of counsel which would excuse his failure

9

to raise this and other issues on direct appeal.  Later in this opinion, the court shall discuss and reject defendant's claim of ineffective assistance of counsel.  Defendant has not made a viable claim of prejudice from the alleged errors made during the guilty plea proceeding.  Furthermore, the court is aware of no circumstances which come close to describing a fundamental miscarriage of justice.  Therefore, the court believes he has waived this argument for collateral relief.

Safety valve  Defendant asserts and the transcript of the sentencing hearing confirms that the plea agreement in this case was made with the idea that defendant would qualify for the application of the safety valve.  It is undisputed though, that defendant is not eligible for the benefits of the safety valve provisions.  Defendant contends that because he was "promised" safety valve treatment as consideration for his guilty plea and did not receive it, his conviction should be vacated.

We believe this contention should be rejected.  As previously stated, the transcript of the guilty plea, the guilty plea petition and the plea agreement make clear that defendant was not promised the application of the safety valve provisions.  Therefore, this argument must be denied.  Additionally, we believe defendant has waived presentation of this argument by failing to raise it on direct appeal.

10

Entrapment    Defendant alleges that he was "completely misinformed as to the plausibility of an entrapment defense in his case." Defendant claims "[c]ounsel misadvised him as to the entrapment defense and said that it was no longer a defense" and further states that had he "known he had a valid and cognizable entrapment defense he would not have pled guilty."   Thus, defendant claims that he received ineffective assistance of counsel.

Defendant, referring to himself as "petitioner", describes his entrapment allegations in his motion to vacate as follows:

> The confidential informant in petitioner's case was a con-man.  He conned petitioner out of $400.00 after giving him a hard-luck sob-story.  Petitioner did not want to buy any ingredients to manufacture any methamphetamine at that particular time.  He was nudged, coaxed and coerced into doing so by the informant earlier.  Petitioner reluctantly agreed in order to help the informant out of a predicament.
>
> . . . .
>
> Petitioner advised counsel that he was duped into buying the pseudoephedrine from [the informant].  He told counsel that he had been entrapped.  But counsel specifically told petitioner that the entrapment law was repealed and it no longer could be used as a defense.  So, petitioner then believed he had absolutely no defense whatsoever.  He believed he had no alternative other than to plead guilty.
>
> In actuality, petitioner was bringing the pseudoephedrine he was tricked into purchasing to his father that night.  Once he asked his father for advice on what to do in his predicament he fully intended to bring it all to the attention of law enforcement.  The petitioner actually related this to

11

investigator Dierks the night of his arrest.

Doc. No. 85, p. 6a.

The Tenth Circuit has stated the following regarding the defense of entrapment:

[E]ntrapment raises the issue of whether the criminal intent [necessary to establish the offense] originated with the defendant or with government agents.

Whether there is a genuine issue concerning the origin of criminal intent depends upon whether there is evidence of lack of predisposition and government involvement and inducement. The defendant must point to evidence of both lack of predisposition and government inducement before the trial judge can determine whether entrapment has been shown sufficiently to present it to the jury. . . .

"Inducement" may be defined as government conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense. This definition implicates the obvious question of whether the defendant was eager or reluctant to engage in the charged criminal conduct. Governmental inducement may take the form of persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship. Evidence that a government agent solicited, requested or approached the defendant to engage in criminal conduct, standing alone, is insufficient to constitute inducement. Inducement also will not be shown by evidence that the government agent initiated the contact with the defendant or proposed the crime.

"Predisposition," on the other hand, may be defined as a defendant's inclination to engage in the illegal activity for which he has been charged, i.e., that he is ready and willing to commit the crime. It focuses on defendant's state of mind before government agents suggest that he commit a crime. Predisposition may be inferred from a defendant's history of involvement in the type of criminal activity for which he has been

12

charged, combined with his ready response to the inducement offer.

. . . .

The defendant is entitled to present the defense to the jury only if he can identify evidence from which a reasonable juror could derive a reasonable doubt as to the origin of criminal intent. To establish a triable issue, the defendant must point to evidence that is more than flimsy or insubstantial. Thus, conclusory and self-serving statements, standing alone, will not suffice.

U.S. v. Ortiz, 804 F.2d 1161, 1165 (10th Cir. 1986) (citations and quotations omitted).

When he pleaded guilty, defendant admitted facts which contradict the existence of an entrapment defense. He told the informant, who was wired, that he was going to use the pills for which he paid $400.00 to make dope, and he said when the dope would be ready. He explained how he was going to make the dope. The sales transaction took approximately four minutes. The search warrant for defendant's residence produced evidence consistent with an intent to illegally possess chemicals to manufacture methamphetamine. The evidence detailed in the search warrant affidavit provides further evidence of predisposition. The guilty plea, itself, is an admission of the elements of the crime, including criminal intent. See U.S. v. Broce, 488 U.S. 563, 569 (1989) (a plea of guilty is an admission of guilt of the substantive crime).

Defendant has produced nothing other than conclusory and self-serving statements to support a claim of entrapment. Under these circumstances, he has failed to demonstrate that his counsel was ineffective for failing to raise the entrapment defense. A claim of ineffective assistance of counsel requires proof that counsel's representation was not objectively reasonable and that the result of the proceeding would have been different but for counsel's unprofessional errors. Hill v. Lockhart, 474 U.S. 52, 57 (1985). On a claim of ineffective assistance based on the failure to advise a defendant of a potential defense, "resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. at 59. Defendant has failed to allege or establish that an entrapment defense had any reasonable chance of success in this case. For these reasons, the court believes defendant's third argument for relief should be rejected.

Denial of allocution  FED.R.CRIM.P. 32(i)(4)(A) requires that at a sentencing hearing the court "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." At defendant's sentencing hearing, the court did not expressly address defendant by name to ask defendant if he wished to say anything

14

on his own behalf.  The court asked defendant's counsel twice if "you" want to say anything regarding the sentence.  Transcript, 6/6/03, pp. 15 & 17.  When the court says "you" in these circumstances, the court normally means counsel and client. But, that meaning is not clearly expressed in the transcript.

Defendant did not raise an objection at the time of sentencing or on appeal.  This alleged error may therefore be viewed as waived and cannot be raised in a § 2255 motion.  Hill v. United States, 368 U.S. 424, 426 (1962); Byrd v. U.S., 345 F.2d 481, 483-84 (10th Cir. 1965); Martin v. U.S., 309 F.2d 81, 82 (10th Cir. 1962) cert. denied, 374 U.S. 834 (1963).  Moreover, the court sentenced defendant to a term at the bottom of the Guidelines range.  Defendant contends that the court may have been persuaded to make a downward departure if he had been able to tell the court, as he desired, how he was coaxed by the informant to buy the pills, how he was attempting to withdraw from the alleged conspiracy, how he intended to call the authorities about the pills, and how he was promised 87 months. There is nothing, however, in these statements which would have persuaded the court at that time that there were adequate grounds to make a downward departure.  For all of these reasons, we believe this argument for relief should be denied.

Inspection of the presentence report   The court did not

15

inquire at the sentencing hearing whether defendant had reviewed the presentence report.  The court did comment that defendant's counsel had "looked over" the presentence report and filed objections.  The court considered those objections and heard evidence from defendant's sister and father regarding the objections.  The court granted one of defendant's objections to a two-level enhancement to the offense level for possession of a firearm.

Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure requires that the court "verify that the defendant and the defendant's attorney have read and discussed the presentence report . . . "  The court did not specifically ask if defendant had read and discussed the presentence report during the sentencing hearing.

Once again, this error by the court was not raised as an objection at the sentencing hearing or as an issue on appeal. It may be considered waived.  See <u>Hill</u>, 368 U.S. at 426-29 (non-compliance with Rule 32 is not sufficient to warrant relief under § 2255); <u>U.S. v. Timmreck</u>, 441 U.S. 780, 783-84 (1979) (technical violation of Rule 11 does not warrant § 2255 relief). Furthermore, defendant has not persuasively asserted how he suffered prejudice as a result of this error.  Nor does he claim that he did not have the opportunity to read and discuss the

presentence report.   It is clear that defendant cannot claim that he was caused prejudice by the error claimed here. Therefore, the court may reject this argument to vacate defendant's sentence.   See <u>U.S. v. Davila-Escovedo</u>, 36 F.3d 840, 844 (9th Cir. 1994) <u>cert. denied</u>, 513 U.S. 1135 (1995) (violation excused if it is clear that no prejudice resulted); <u>U.S. v. Rangel-Arreola</u>, 991 F.2d 1519, 1526 (10th Cir. 1993) (court refuses to remand for resentencing when trial court did not elicit whether defendant had reviewed and discussed the presentence report where error was harmless and defendant suffered no prejudice).

     <u>Entrapment as grounds for a downward departure</u>   Defendant asserts that "imperfect entrapment" or outrageous government conduct should have been argued as a grounds for a downward departure during his sentencing hearing.   Section 5K2.12 of the Sentencing Guidelines provides that:   "If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. . . . Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency."   The Ninth Circuit has held

17

that a court may consider making a downward departure where a federal agent has aggressively encouraged wrongdoing, although such activity may not amount to a complete defense to the criminal charge.  U.S. v. Garza-Juarez, 992 F.2d 896, 912 (9th Cir. 1993) cert. denied, 510 U.S. 1058 (1994); see also U.S. v. Cheape, 889 F.2d 477, 480 (3rd Cir. 1989).

In defendant's motion to vacate, defendant fails to list any facts which would allow a reasonable attorney to conclude that this was plausible grounds for advocating a downward departure. The factual information in the presentence report does not support an argument for a downward departure on the basis of coercion or entrapment.  These facts were not objected to during the sentencing proceedings.   The court sees nothing in defendant's motion which would cause the court to grant a downward departure on the grounds of entrapment or coercion.  In conclusion, there is nothing in defendant's motion or in the record to suggest that defendant's counsel acted unreasonably in failing to request a downward departure on this basis or that defendant suffered prejudice.  Therefore, the court believes we should reject this argument for relief.

Ineffective assistance of counsel  The court shall return to this issue because it is prevalent throughout defendant's memorandum in support of his motion, and it is the last argument

listed in the memorandum.  As noted before, to establish a claim of ineffective assistance of counsel, a defendant must show, first, that his representation was objectively unreasonable, and second, that his counsel's deficient representation resulted in actual prejudice to his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

Defendant asserts that his counsel was ineffective because: she informed defendant prior to his guilty plea that he would receive the benefit of the safety valve provisions; she advised defendant there was no entrapment defense; she should have advised defendant to plead to count 2 instead of count 1 to receive the benefit of the safety valve; she did not argue for a downward departure based upon "imperfect entrapment"; she did not fulfill her duty to investigate the case prior to trial; and she did not raise these issues and other issues discussed in this order as points on appeal.

Defendant's allegation of failure to investigate claim appears to be tied to the safety valve issue and the entrapment issue.  Defendant does not discuss any other legal or factual matter which his counsel failed to investigate.  Defendant, however, has not alleged any facts relating to entrapment which his counsel should have discovered through investigation and, therefore, has not established either that his counsel acted

19

unreasonably in not investigating or asserting an entrapment defense or "imperfect entrapment" as a sentencing mitigator, or that he suffered any prejudice because of this alleged failure to investigate.

As to the safety valve issue, again defendant fails to allege facts satisfying either prong of an ineffective assistance of counsel claim.  The Tenth Circuit has held:  "A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."  <u>U.S. v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993) <u>cert. denied</u>, 510 U.S. 1184 (1994).  Defendant has also failed to allege that he suffered the kind of prejudice that is a prerequisite for relief.  "To show prejudice in the guilty plea context, the defendant must establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial."  <u>Id</u>., quoting, <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).  Defendant was thoroughly informed at the time of the guilty plea that the court might impose a sentence different from the calculation of his attorney.  He decided to plead guilty in spite of this warning. Defendant has also not alleged in the instant motion that he would have refused to plead guilty if he had known that he would

20

not receive the benefit of the safety valve provisions.

As for the other issues raised by defendant in this motion, defendant again has failed to assert or demonstrate prejudice from his counsel's alleged errors.  Had defense counsel raised on appeal the alleged errors made during the guilty plea hearing or the sentencing hearing, there is no claim or reasonable grounds to believe that the result in this case would have been different even if the case had been remanded for resentencing. There is no reasonable grounds to believe that defendant would not have pleaded guilty or that defendant would have received a different sentence.  Defendant was sentenced at the bottom of the guideline range.  No proper or reasonable grounds for departure have been raised. Therefore, it appears that defendant has failed to demonstrate either prong of the test for ineffective assistance of counsel as to the matters raised in his motion to vacate.

Conclusion

For the above-stated reasons, the court believes defendant's § 2255 motion should be dismissed.  However, the court shall not direct the dismissal of the motion at this time.  Some of the points raised in this order involve a sua sponte application of the "Frady" rule - i.e., "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a

21

convicted defendant must show both 1) 'cause' excusing his double procedural default, and 2) 'actual prejudice' resulting from the errors of which he complains." <u>U.S. v. Frady</u>, 456 U.S. 152, 167-68 (1982).  Under Tenth Circuit law, the court must afford defendant the opportunity to respond to this argument. <u>U.S. v. Hines</u>, 971 F.2d 506, 509 (10th Cir. 1992).  Although defendant has anticipated the application of the <u>Frady</u> rule in his memorandum in support of his motion to vacate (see p. 17), the court shall grant defendant 30 days from the date of this order to respond to the points made in this order.  Then, the court shall evaluate again how to proceed with this motion.

**IT IS SO ORDERED.**

Dated this 2nd day of February, 2005 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge

22